**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 13-20850-CR-UNGARO/TORRES**

UNITED STATES OF AMERICA

vs.

RAFAEL COMAS,

     Defendant.

_____/

**ORDER ON GOVERNMENT'S MOTION FOR RECONSIDERATION**

**CONCERNING *JENCKS* MATERIAL AT PRETRIAL DETENTION HEARING**

**<u>AND EXPLAINING THE UNDERSIGNED'S PRESUMPTIVE PROCEDURE</u>**

Lyrics from Imagine Dragons' hit song "It's Time" provide the applicable approach to the Government's reconsideration motion of an order regarding the production of *Jencks* material at a pretrial detention hearing:

I'm just the same as I was
Now don't you understand
That I'm never changing who I am[1]

In its reconsideration motion, the Government asks me to reverse course on my decision that the Government was required to disclose *Jencks* material concerning the pretrial detention hearing testimony of DEA Special Agent Michael Friebel. [ECF Nos. 19; 30].

---

[1]    From the album "Night Visions" (Interscope Records, 2012).

Despite being ordered to file a response and being afforded additional time to do so,

Defendant Rafael Comas ("Comas") did not submit a response.[2] [ECF Nos. 31; 36; 37].

The Government acknowledges, as it must, that Federal Rule of Criminal

Procedure 46(j) ("producing a statement") provides that Rule 26.2 -- which requires the

Government and the defense, upon motion, to produce witness statements after the

witness' direct examination -- applies to pretrial detention hearings under 18 U.S.C. §

3142. Nevertheless, the Government argues, without citing any decisional authority,

---

[2]        As one court has noted, "[a] court need not beg a party to comply with its
orders." *Peters-Turnball v. Bd. of Educ. of the City of New York,* No. 96 CIV. 4914 (SAS),
1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999).

After Comas failed to file his court-ordered response, the Undersigned's law
clerk contacted defense counsel, who advised that he had not made the required
submission because he was in plea negotiations with the prosecutor and there was a
chance that the case would be resolved without a trial. Nevertheless, defense counsel
promised to file something, but he never did. The mere fact that a defense attorney is
having plea discussions with the prosecutor does not mean that orders need not be
followed or that deadlines can be ignored. **Most** federal criminal cases are resolved
through a plea. In fact, 88.9% of all federal criminal cases filed in the United States in
2010 were terminated through a plea. U.S. Department of Justice, Office of Justice
Programs, Bureau of Justice Statistics. Thus, if the simple existence of plea discussions
were sufficient justification to skip case-related deadlines, then a substantial majority of
federal criminal cases would involve defense lawyers and prosecutors who routinely
failed to comply with deadlines.

Defense counsel could have filed another motion for a second enlargement of
time if he anticipated a quick plea. Or he could have filed a motion to hold the briefing
requirement in abeyance until negotiations were completed. Or he could have, at a
minimum, contacted chambers by telephone and advised that a plea resolution was
imminent. Or he could have filed the required memorandum. What he could not do,
however, was cavalierly fail to comply with an order. As of today, the Undersigned's
chambers has not been advised that a plea will in fact occur and the docket sheet does
not reflect such a development either.

that the Undersigned's analogy to Rule 12(h), which extends Rule 26.2 to pretrial detention hearings, is inappropriate. It contends that policy reasons -- the differing purposes between a suppression hearing and a pretrial detention hearing -- justify different results for pretrial detention hearings (i.e., no witness statements) and suppression hearings (i.e., witness statements).

The Undersigned is not persuaded by the Government's argument and therefore denies the reconsideration motion for the reasons outlined in this Order. This Order will also specify the Undersigned's procedure for the disclosure of *Jencks* material at pretrial detention hearings before the Undersigned.

## I.      BACKGROUND

At Defendant Comas' November 22, 2013 pretrial detention hearing, the Undersigned directed the Government to proceed by proffer and to then put on its witness for live testimony. The Government did so and called Agent Friebel. During Agent Friebel's testimony, Comas requested Agent Friebel's *Jencks* material. The Government objected because it contended that it did not call him as a witness. Moreover, the Government advised that it did not have the *Jencks* materials in court, in any event. Comas contended that *Jencks* materials had to be produced, regardless of which party technically called Agent Friebel as a witness. At the end of the pretrial detention hearing, the Undersigned granted the Government's pretrial detention

request and directed both parties to brief the *Jencks* issue. The parties submitted the required memoranda. [ECF Nos. 17; 18].

In a written order, I granted Comas' request for Agent Friebel's *Jencks* material. [ECF No. 19]. In that order, I noted that, for all practical purposes, I called the witness because I established the procedure, and I analogized the scenario to a suppression hearing, where a law enforcement officer is considered a Government witness for *Jencks* purposes. Fed. R. Crim. P. 12(h). I also noted that the Advisory Committee Notes to the 1993 Amendment explain that the defendant is entitled to any statement of the officer in the Government's possession relating to the subject matter of the witness' testimony, "without regard to whether the officer was in fact called by the government or the defendant." Consequently, I allowed Comas to file a motion to reopen the pretrial detention hearing and to request reconsideration of the detention order if he were to conclude in good faith: that his cross-examination of Agent Friebel would have been significantly different had he had the *Jencks* material at the pretrial detention hearing; and that my ruling might have been different.

The Government provided the *Jencks* material. Comas, however, did not move to reopen the pretrial detention hearing. Nevertheless, the Government filed the instant motion to reconsider.

## II.    DISCUSSION

As a threshold matter, the Undersigned notes that the Government is not disputing that *Jencks* is generally applicable to pretrial detention hearings. *See United States v. Simpson*, 360 F. App'x 537, 538 (5th Cir. 2010) (affirming pretrial detention order and finding that defendant had not shown he was prejudiced by magistrate judge's denial of defendant's request for *Jencks* material). Going even further, the Government also does not dispute that if it calls the witness to testify at the pretrial detention hearing, then it must produce *Jencks* material. [ECF No. 18, p. 4]. What the Government is disputing is that if it proceeds on a proffer, but the presiding judge requests live testimony from a Government witness, then that witness should be deemed the court's witness or the defendant's witness, but not the Government's witness. Therefore, according to the Government, *Jencks* should not apply in these circumstances. [ECF No. 18, pp. 3-4]. The Undersigned disagrees.

The Bail Reform Act expressly and specifically permits a *defendant* to proceed by way of proffer, but is silent as to whether the *Government* may do so. 18 U.S.C. § 3142(f); *United States v. Cooper*, No. CRIM. BEL-08-0239, 2008 WL 2331051, at *1 (D. Md. June 4, 2008). In this circuit, the Government, as well as the defense, "may proceed by proffering evidence subject to the discretion of the judicial officer presiding at the detention hearing." *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987). But "[i]t is the **Court** and not the government that determines whether proceeding by proffer is

5

acceptable in a given detention hearing." *United States v. Hammond*, 44 F. Supp. 2d 743, 744 (D. Md. 1999) (emphasis supplied). And *Gaviria* does not stand for the rule that *only* proffers are permitted, nor does it preclude the presiding judicial officer from exercising discretion and requesting live testimony or adopting a procedure consistent with the statute.

Judges in this district and other districts employ a variety of procedures for pretrial detention hearings. Some judges permit the Government to proceed only by proffer. Some permit the Government to proffer while also requiring the Government to produce a live witness. Most significantly, some judges require the Government to produce *Jencks* material (if it exists) after the agent testifies, others do not (agreeing with the Government's theory that the *Government* did not call the witness). *See also Cooper*, 2008 WL 2331051, at *1-2 (noting that in the district of Maryland, courts generally permit the Government to proceed by proffer but occasionally require live testimony).

In my view, all of these approaches are permissible. There is no right or wrong procedure, as the presiding judge has broad discretion to craft an appropriate procedure.

Because a magistrate judge is not **required** to permit the Government to proceed by proffer and may instead require live testimony, the procedure which permits the Government to proceed by proffer is a courtesy which is provided to the Government in order to streamline the proceeding. *See Cooper*, 2008 WL 2331051, at *1 (noting that

6

allowing the Government to proceed by proffer conserves public resources and the time of law enforcement). Magistrate judges could just as easily impose a no proffer/live testimony requirement. If that were to happen, then the *Jencks* material would be required because the Government did, in fact, call the witness. Therefore, the Undersigned does not believe that providing a courtesy to the Government transforms the witness to the court's witness or the defendant's witness, resulting in the non-production of *Jencks* material. *Id.* at *2-3 (noting that pretrial detention hearing was continued to allow Government to produce *Jencks* material where court, not Government, required live testimony).

## III.   THE UNDERSIGNED'S PROCEDURE

Under these circumstances, I exercise my discretion to permit the Government to proceed by proffer, subject to the general presumptive requirement that any *Jencks* material for the Government witness selected to testify be provided to the defense after the agent's detention hearing testimony (so that defense counsel can use it at that hearing for cross-examination limited to relevant issues, as opposed to free discovery). This requirement may be modified in specific cases, as outlined below.

The Undersigned's practice concerning pretrial detention hearings and *Jencks* material is as follows:

1.   The Government can choose whether to initially proceed by proffer or by having an agent provide live testimony. If the Government chooses to proceed by

proffer, then it must have a **knowledgeable** witness in court to testify after the proffer. But regardless of whether the Government begins by proffer or through live testimony, it will need to have that witness' *Jencks* material, if it exists, present in court and will need to provide it to the defense after the witness testifies.

2.    This practice does not require the Government to **create** *Jencks* material for the hearing. If it exists, then it will be produced, and if it does not exist, then it cannot be produced.

3.    Although the **presumptive** practice is that the Government will be required to provide *Jencks* material if it exists, the Undersigned will entertain the Government's request to *not* provide *Jencks* material on a case-by-case basis. For example, if a defendant has already been indicted and there are numerous recorded conversations in which the defendant is making inculpatory statements, then the Undersigned may well eliminate the *Jencks* requirement because the purported need to probe the strength of the case against that particular defendant is hardly compelling.  However, the Government should not *assume* that the presumptive practice will be changed -- and the prosecutor must therefore have the *Jencks* material (assuming it exists) in court.

4.    This procedure does not require the Government to always have the lead case agent testify at a pretrial detention hearing. The Government has the discretion to select an appropriate, knowledge witness. That witness may or may not be the case agent.

5.      Regardless of whether the Government has the lead case agent or another law enforcement witness in court for the pretrial detention hearing, the case agent or witness must be personally familiar with the underlying factual scenario -- **or** must have taken steps to *become* familiar with the facts relevant to the limited-purpose detention hearing. Although this list is not designed to be mandatory or exclusive, the agent or witness could review reports, review transcripts, speak with other law enforcement agents, listen to taped conversations, and/or review evidence in order to be an adequate witness.

6.      If the case agent or witness is not adequately familiar with the facts, then the Undersigned will, upon defense request, consider a continuance of the hearing so that the Government can locate an appropriate witness or take steps to convert the inadequate witness into an acceptable one.

7.      If the *Jencks* material for the witness testifying at the pretrial detention hearing is voluminous, then the Undersigned will, upon defense request, consider a slight adjournment or even a continuance of the hearing, so that counsel has time to review the material.

8.      Because (1) *Jencks* material is strictly limited to impeachment, *United States v. Delgado*, 56 F.3d 1357, 1364 (11th Cir. 1995), (2) the primary purpose of *Jencks* material  is to enable a defendant to compare the witness' in-court testimony to his prior statements on the same subject, *United States v. Denton*, No. 11-14663, 2013 WL 4529525 (11th Cir.

Aug. 28, 2013), and (3) a detention hearing is not designed afford defendants a discovery device, *Gaviria*, 828 F.2d at 669, the defendant shall not copy, reproduce, or disseminate the *Jencks* material.[3]

      **DONE and ORDERED** in Chambers, in Miami, Florida, January 14, 2014.

                                     Jonathan Goodman
                                     UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
The Honorable Ursula Ungaro
All Counsel of Record

---

[3]     United States District Judge Ursula Ungaro has already provided this very protection in the instant case by granting the Government's Motion for a Protective Order Regulating Disclosure of *Jencks* material. [ECF No. 42].